UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

DOMINIQUE DOSS,

        Plaintiff,              Case No. 2:17-cv-44

v.                                      Honorable Gordon J. Quist

LINDA MAKI, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff, Dominique Doss, leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff, a state prisoner currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Hearing Officer

Linda Maki and Corrections Officer Unknown McPherson. Plaintiff alleges that on July 30, 2015, he made the following statement to Defendant McPherson: "I'm going to beat your ass for playing with my mail." Defendant McPherson told Plaintiff that there was no need to make threats and that he would check everyone's mail before he passed it out.

On August 5, 2015, Plaintiff filed a grievance against Defendant McPherson regarding McPherson's handling of the mail. On August 10, 2015, Defendant McPherson threatened to have Plaintiff placed in administrative segregation for filing grievances. Plaintiff offers the affidavits of inmates B. Martin #251228 and Samuel Sams #698201, who both attest that they heard Defendant McPherson tell Plaintiff that a grievance would not get him anywhere but in segregation. *See* ECF Nos. 1-3 and ECF No. 1-4. Plaintiff's grievance was denied at each step.

On September 10, 2015, Plaintiff filed a grievance on Defendant McPherson for placing his mail on the floor and kicking it under Plaintiff's door. On September 27, 2015, Plaintiff filed a grievance on Defendant McPherson for pouring shampoo on Plaintiff's legal paperwork while conducting a shakedown of Plaintiff's cell. Defendant McPherson told Plaintiff that he was lucky that he had not been set up by Defendant McPherson, and that only time would tell.

On October 6, 2015, Defendant McPherson wrote a misconduct ticket on Plaintiff for threatening behavior. Plaintiff believes that the ticket was motivated by a desire to retaliate against him for his use of the grievance system. On October 7, 2015, Plaintiff filed a grievance on Defendant McPherson claiming that the misconduct ticket was retaliatory. Plaintiff provided five witness statements in support of this grievance. On October 12, 2015, Defendant Maki held a hearing on the misconduct ticket. Defendant Maki excluded all five of Plaintiff's witness statements from evidence at the hearing. Defendant Maki found Plaintiff guilty of threatening behavior and sentenced him to five days detention, thirty days loss of privileges, and placement in administrative

segregation. Plaintiff's security level was elevated by seven points and the misconduct conviction was added to Plaintiff's file, which had a negative impact on Plaintiff's parole eligibility. Plaintiff's request for rehearing was denied by Richard D. Russell.

Plaintiff spent two-hundred and six days in administrative segregation. Plaintiff claims that conditions in administrative segregation were harsh. Plaintiff claims that Corrections Officers in administrative segregation make rounds every twenty minutes, during which they bang a metal pipe against the cell doors, disturbing inmates who are attempting to sleep, study, or pray. This conduct caused Plaintiff to awake from sleep frightened, gave him headaches, and made him paranoid and anxious. Plaintiff claims that during his time in administrative segregation he was sexually assaulted by staff, slammed down on his head while restrained, and was given two class II misconduct tickets. Plaintiff also claims that other inmates in administrative segregation frequently bang on doors and walls, yell, sing, argue, and throw urine and feces. Plaintiff contends that he suffered mental and emotional distress and sleep deprivation.

Plaintiff alleges that while he was confined in administrative segregation, a Corrections Officer stood next to him in the exam room whenever he visited health services. Sometimes Corrections Officers discussed Plaintiff's medical issues in his presence. Plaintiff also lost the opportunity to use the phone during recreation time, was in restraints whenever leaving his cell, and was only allotted five minutes to shower and shave. Plaintiff's educational, exercise, visitation, and religious opportunities were also either eliminated or severely restricted.

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

**Discussion**

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendant McPherson's conduct in writing him a major misconduct ticket for Threatening Behavior on October 6, 2015, and Defendant Maki's conduct in subsequently finding him guilty of the misconduct, violated his Fourteenth Amendment due process rights. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even if Plaintiff could show that his misconduct conviction implicated a liberty interest, it is clear from the record that he received due process in this case. Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

conduct of their affairs." *Id.* Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.* Plaintiff has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusion that Plaintiff was guilty of the misconduct charge was supported by the record. Plaintiff attaches a copy of the hearing report on this misconduct, which extensively lists the evidence considered and the reasons for the guilty finding:

> EVIDENCE IN RECORD: (Unless otherwise noted, each listed document consists of one page.) Misconduct report, Misconduct Sanction Screening Form, investigator note, Hearing Investigation Report, prisoner's statement and requests (6), statements from Rogers, Passmore, Fields, O'neal and Pipes, video statement and verification read to the prisoner. Hearing Officer viewed the video and the video statement appeared to be accurate. Prisoner informed that the video showed that the prisoner was the first one to get mail. The officer dropped the mail and something held the officer's interest as he started to walk away as he stopped, while looking towards the prisoner's cell, for a couple of seconds. He took a couple steps and, again, looked in the direction of the prisoner's cell. This time he was about six feet from the cell. The officer continued dropping mail on the floor in front of other prisoners' cells. The officer looked in the direction of the prisoner's cell both times he walked back to the prisoner's side of the hall to deliver mail to other prisoners. The officer looked towards the prisoner's cell four times.
>
> PRISONER'S TESTIMONY AT HEARING: At the hearing the prisoner stated, "Not guilty." Prisoner explained that he had written four grievances on the officer. He is now Step 3 on the officer threatening to write him a falsified Threatening Behavior on 8/10/15. He filed grievances in early September for creating a medical condition. He filed another one late September for the officer's harassment of him filing the earlier grievance. On the September grievances he is at step two and is waiting for a step two appeal on the other. The fourth one is the one he filed in late July. He is now waiting for Step 3 response. After the prisoner heard the contents of the video, the prisoner stated, "If he looked at me four times, why didn't he say that in the ticket? Why didn't he say he had eye contact or direct observation?" The officer never said he had directly seen him. "It is easy to look back at the cell. It doesn't mean he was looking at me." The officer never specified that he had eye contact with Doss. The officer never said that the words were directed

towards him. Prisoner had no other comment when asked - stated, "No." Prisoner informed of the decision and sanction prior to leaving the hearings room.

QUESTIONS TO OFFICER: Prisoner's questions to the officer about his grievances are unnecessary as the prisoner has that information as the grievances were answered. The grievance response would indicate if the officer was interviewed about the prisoner's grievances.

THREAT: On 10/6/15 the prisoner stated to the officer, "McPherson, if you pass my mail under the door again, I will beat your fucking ass." This expressed the intent to physically assault the officer. Prisoner intended to cause fear of physical harm in the officer as the prisoner directed his comment to the officer when the officer was about three feet from the prisoner. Prisoner claims that the officer falsified this misconduct report because he has filed grievances against the officer and, in fact, the officer had threatened to write a fabricated misconduct report on 8/10/15. Prisoner is not believed that he did not threaten the officer. First, prisoner did not present his claims in a credible manner at the hearing. Prisoner did not carry the conviction of truth in his voice. Second, even though the video does not have audio, what was seen on the video was consistent with the officer's claims. Something was drawing the officer's attention to the prisoner as he kept looking towards the prisoner's cell, which would be consistent with the officer's assertion that the prisoner had threatened to "beat your fucking ass." Third, prisoner was short on relevant facts. Fourth, prisoner claims that the officer wrote this misconduct report in retaliation for grievances but grievances are routine in a level five facility. To this point, none of the prisoner's grievances were found to have any merit. It is not believed that the officer would fabricate a misconduct report against the prisoner and risk losing his job over grievances that were not a threat to him. Fifth, just because the prisoner stated a couple of months prior that the officer would write a fabricated Threatening Behavior misconduct report is not proof that the prisoner had not threatened the officer nor is it proof that this particular misconduct report was fabricated. Sixth, prisoner complained that the officer never said he had eye contact or that he observed the prisoner make the threat. The officer indicated that he was three feet from the cell when the threat was made. The video showed that the officer was looking in the prisoner's direction at that time, the fact that the officer was three feet from the prisoner and Doss was the only one to get his mail slid under the door to that point, demonstrates that the officer would be close enough to the prisoner to know if the prisoner had made the comment or not. Prisoner makes no claim that someone else had

> made the threat. Reporting staff member factual and is credible as to what occurred. Prisoner was not. Charge upheld.

*See* ECF No. 1-14.

It is clear that Plaintiff received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearing. Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. at 564-66. If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). Plaintiff has failed to show that his constitutional rights were denied.

Moreover, the Court notes that Defendant Maki is employed as a Hearing Officer and that Plaintiff's claims against her are all related to her conduct during his misconduct hearing. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble*

*v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Therefore, Defendant Maki is absolutely immune from suit for damages under the circumstances of this case.

In addition, injunctive relief is not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Plaintiff claims that Defendant McPherson retaliated against him when he wrote the October 6, 2015, misconduct ticket on him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt based on some evidence of a violation of prison rules. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). In *Peterson*, a

Michigan prisoner, claimed that two corrections officers violated his Eighth Amendment right against cruel and unusual punishment. Peterson's claim arose from an incident in which Officers Johnson and Lindy were trying to put Plaintiff in his cell. *Id*. at 908. During the alleged incident, Johnson's hand became stuck in the cell just as the door began to close. Johnson frantically called out to Lindy to stop the door from shutting on his hand. *Id*. The sole factual dispute in the case was why Johnson's hand was in the cell. Peterson claimed that Johnson put his hand in the cell as an excuse to pull Peterson out and assault him, while Johnson maintained that Peterson grabbed Johnson's hand and pulled it into the cell. *Id*. Peterson was charged with a major misconduct for assault and battery as a result of the incident. *Id*. The hearing officer concluded that Peterson grabbed Johnson's hand and found him guilty of the misconduct.

The Sixth Circuit considered whether the factual finding of the hearing officer that Peterson grabbed Johnson's hand had a preclusive effect on Peterson's Eighth Amendment claim. To resolve the question, the Court looked to the Supreme Court's decision in *University of Tennessee v. Elliott*, which explained that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. 788, 799 (1986) (citation, internal quotation marks, and edits omitted). The *Elliott* Court identified four criteria for according preclusive effect: (1) whether the state agency acted in a judicial capacity; (2) whether the hearing officer resolved a disputed fact that was properly before him; (3) whether the party to be precluded had an adequate opportunity to litigate the factual dispute; and (4) if the other three criteria are satisfied, the finding is given the same preclusive effect as it would be given in state courts. *Id.* at 912-13. After applying the four criteria to the Michigan Department of Corrections major misconduct hearing process, the

Sixth Circuit in *Peterson* concluded that the Michigan courts would grant preclusive effect to the hearing officer's finding that Peterson grabbed Johnson's hand.² *Peterson*, 714 F.3d at 917.

A year later, in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), the Sixth Circuit faced the same question in another § 1983 civil rights action alleging excessive use of force. The Court limited its holding in *Peterson* and held that the question of preclusion had to be decided on a case-by-case basis. The court stated in part:

> To the extent that Torres argues that, in light of *Peterson*, any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect, we reject such a reading of *Peterson* as overbroad. *Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing. Although the language of our opinion in *Peterson* is at times categorical, our decision to accord preclusive effect to particular findings from Peterson's prison hearing necessarily turned, at least in part, on the particular circumstances of Peterson's case. Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so – not just in theory, but in practice. *Id*. at 916–17. It likewise turns on the court's "sense of justice and equity," *Blonder–Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d 398, 404-05. In this case, it is clear to the Court that Plaintiff had a sufficient opportunity to argue that the misconduct was retaliatory during the hearing. As noted above, Hearing Officer Maki carefully considered all the evidence, including evidence of Plaintiff's prior grievances, his testimony, and the video evidence, and decided that Plaintiff's claim that the misconduct was false and retaliatory was not supported by the evidence. Therefore, pursuant to the

---

²By its terms, preclusion under *Peterson* is limited to misconduct proceedings conducted by a hearing officer under MICH. COMP. L. § 791.251 et seq., which expressly govern only major (Class I) misconducts. The procedural hearing protections for major misconducts are not available for minor misconducts. MICH. COMP. L. § 791.251(5) (expressly providing that hearings before hearings officers are not available for minor misconduct charges).

Sixth Circuit's decisions in *Peterson* and *Roberson*, the Court concludes that Plaintiff's retaliation claim against Defendant McPherson is properly dismissed.

Finally, Plaintiff's alleges that various prison officials violated his constitutional rights while he was confined to administrative segregation. However, Plaintiff fails to allege that either of the named Defendants was involved in any of the alleged violations. Therefore, the Court need not consider these allegations.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: May 5, 2017                                         /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE