UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOMINIQUE DOSS #785510,

Case No. 2:17-cv-00044

Plaintiff,

Hon. Gordon J. Quist
U.S. District Judge

v.

MITCHELL MCPHERSON,

Defendant.

_____/

**REPORT AND RECOMMENDATION**

## I.     Introduction

State prisoner Dominque Doss filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 13, 2017.  Doss says that while he was confined at the Baraga Correctional Facility (AMF) in 2015, the remaining Defendant – AMF Correctional Officer Mitchell McPherson – retaliated against him for filing grievances, in violation of the First Amendment.

From August to October of 2015, Doss filed five separate grievances against McPherson.  Doss claims that McPherson retaliated against him for filing these grievances by (1) threatening to have him put in administrative segregation, (2) kicking mail under his cell door, (3) pouring shampoo on his property during a shakedown, and (4) writing a false misconduct ticket on him.

This report and recommendation addresses McPherson's motion for summary judgment.  In his motion, McPherson argues that he is entitled to summary judgment because Doss failed to show that McPherson committed the alleged adverse actions

1

and/or failed to show a causal connection between his protected conduct and McPherson's alleged adverse actions.   (ECF No. 38, PageID.218.)   In addition, McPherson argues that the evidence shows that he would have slid the mail under Doss's cell door and would have issued Doss the misconduct ticket regardless of Doss's protected conduct.  Finally, McPherson argues that Doss's claims are barred by the doctrines of sovereign immunity and qualified immunity.

In response, Doss argues that he established the elements of his retaliation claims and that the burden rests with McPherson to show that he would have engaged in the same actions even in the absence of Doss's protected conduct.  (ECF No 40, PageID.338-343.)  McPherson has not replied to Doss's response.

For reasons that will be discussed below, the undersigned concludes that McPherson is entitled to summary judgment as to the claims that he retaliated by kicking mail under Doss's cell door (claim 2), pouring shampoo on Doss's legal paperwork (claim 3), and writing a misconduct ticket against Doss (claim four). However, the undersigned concludes that genuine issues of material fact remain as to Doss's claim that McPherson retaliated against him in violation of the First Amendment by threatening to transfer him to administrative segregation.  The undersigned also concludes that the doctrine of sovereign immunity bars Doss's claims against McPherson in his official capacity because Doss neglected to request injunctive relief.

## II.     Procedural History

On March 13, 2017, Doss filed this action in federal court.   He stated constitutional claims against two separate Defendants: CO McPherson and MDOC Hearing Officer Maki.  (ECF No. 1, PageID.1.)  Doss sued McPherson in his official and individual capacity, and requested the Court grant him $50,000 compensatory damages and $50,000 punitive damages.  (*Id*., PageID.2, 15.)  Doss did not request injunctive relief against McPherson.

On May 5, 2017, the Court issued a screening opinion and order that dismissed the entire action for failure to state a claim.  (ECF No. 4, PageID.107; ECF No. 5, PageID.120.)  The Court dismissed Doss's retaliation claims because the Court ruled that these claims were precluded by the MDOC's adjudication of guilt on the underlying misconduct ticket.

On July 16, 2018, the Sixth Circuit affirmed the Court's dismissal of Doss's claims against Maki and all of Doss's claims against McPherson, except for the First Amendment retaliation claims.  (ECF No. 17, PageID.172.)  The Court of Appeals ruled that the retaliation claims were incorrectly dismissed because the District Court failed to apply the burden-shifting framework established in *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (holding that when a plaintiff establishes a cognizable First Amendment retaliation claim, the burden of production shifts to the defendant to show that he would committed the same conduct even in the absence of the plaintiff's protected conduct).

On December 11, 2019, McPherson filed his motion for summary judgment. (ECF No. 37, PageID.215.)  On January 15, 2020, Doss filed his response.  (ECF No. 40, PageID.336.)

### III.   Plaintiff's Allegations

Doss claims that McPherson retaliated against him for filing grievances from August to October of 2015.  Doss identifies four specific acts of retaliations.  The table below summarizes Doss's First Amendment retaliation claims against McPherson.

| Claim # | Claim | Defendant | Allegation | (ECF No. 1, PageID.#) |
|---|---|---|---|---|
| 1 | Retaliation | McPherson | On 8/10/15, McPherson retaliated against Doss for filing grievances by threatening to place Doss in administrative segregation.[1] | 3 |
| 2 | Retaliation | McPherson | On 9/10/15, McPherson retaliated against Doss for filing grievances by placing Doss's mail on the floor and kicking it into his cell, which forced Doss to pick the mail up off the "germ infested floor."[2] | 4 |
| 3 | Retaliation | McPherson | On 9/27/15, McPherson retaliated against Doss for filing grievances by pouring shampoo on Doss's legal documents and | 4 |

---

[1]    On August 10, 2015, Doss submitted grievance **AMF-15-08-1886-17b** at Step I and it complained about McPherson's alleged retaliatory conduct.  (*See* ECF No. 38-3, PageID.277-280.)

[2]    On September 10, 2015, Doss submitted grievance **AMF-15-09-2175-03d** at Step I and it complained about McPherson's alleged retaliatory conduct. (*See* ECF No. 38-3, PageID.281-284.)

| Claim # | Claim | Defendant | Allegation | (ECF No. 1, PageID.#) |
|---|---|---|---|---|
| | | | grievances.  McPherson also threatened to "set up" Doss.[3] | |
| 4 | Retaliation | McPherson | On 10/6/15, McPherson retaliated against Doss for filing grievances by issuing Doss a false misconduct ticket.[4] | 4-5 |

## IV.     Summary Judgement Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[3]     On September 27, 2015, Doss submitted grievance **AMF-15-09-2351-19c** at Step I and it complained about McPherson's alleged retaliatory conduct.  (*See* ECF No. 38-3, PageID.285-288.)

[4]     On October 7, 2015, Doss submitted grievance **AMF-15-10-2424-17b** to Step I and it which complained about McPherson issuing him a false misconduct ticket. (*See* ECF No. 38-3, PageID.289-293.)

## V.      Retaliation, in Violation of the First Amendment

In order to set forth a retaliation claim, a plaintiff must establish that (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  "'[A]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399 (internal citations omitted).

### a.  Claim One: McPherson Threatened to Place Doss in Administrative Segregation in Retaliation for Grievances Filed

#### i.  Challenge to the Second Element: The Adverse Action

With respect to Doss's first claim, McPherson does not dispute that Doss engaged in protected conduct (the filing of grievances).  Instead, McPherson challenges the second element of Doss's claim in two ways.  First, McPherson argues

6

that Doss failed to provide admissible evidence that shows that McPherson threatened Doss with administrative segregation (the adverse action) on August 10, 2015.  (ECF No. 38, PageID.229.)  Second, McPherson argues that Doss failed to meet his burden because this alleged adverse action was *de minimis*.  (*Id.*, PageID.230 (citing *Siggers-El v. Barlow*, 412 F.3d. 693, 701 (6th Cir. 2005)).)

The undersigned concludes, first, that Doss's verified complaint and one of the two declarations Doss provided on this issue meet the requirements of Fed. R. Civ. P. 56(c)(1)(A).  During summary judgment proceedings, a party asserting a fact must support that assertion by citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  A "verified complaint" – meaning a complaint that includes an attestation that meets the requirements of 28 U.S.C. § 1746 – carries the same weight as would an affidavit for the purposes of summary judgment.  *See Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir.1993) (explaining that where a party files a verified complaint, the allegations contained therein "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment") (internal quotation marks omitted). A review of Doss's complaint indicates that it qualifies as a "verified complaint."  (*See* ECF No. 1, PageID.16.)

The undersigned also notes that the declaration of Benson L. Martin (ECF No. 1-4, PageID.25) appears to meet the requirements of 28 U.S.C. § 1746, while the

declaration of Samuel Sams (ECF No. 1-3, PageID.24) does <u>not</u> appear to meet the requirements of 28 U.S.C. § 1746 because it is not signed.

Thus, Doss has overcome McPherson's evidentiary objection with respect to the evidence he presents on his first claim.

Turning to the substance of the first claim, Doss's complaint alleges that McPherson threatened to have him place in administrative segregation for filing grievances.  (*Id.*, PageID.3.)  In addition, during his deposition, Doss testified that McPherson threatened to place him in administrative segregation for filing grievances. (ECF No. 38-2, PageID.253.)  And, finally, Martin attests that he heard McPherson make this threat to Doss.  (ECF No. 1-4, PageID.25.)

Accordingly, the undersigned concludes that Doss's verified complaint, Martin's declaration, and Doss's deposition testimony are sufficient to create a genuine issue of material fact as to whether McPherson threatened to have Doss placed in administrative segregation for filing grievances.

McPherson asserts that this threat, if it was made, would not constitute an adverse action because it was *de minimis* in nature.  The undersigned disagrees. "[A]n adverse action is one that would deter a person of ordinary firmness from the exercise of the right at stake."  *Thaddeus–X*, 175 F.3d at 396 (internal quotation omitted).

> [C]ertain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.

*Id.* at 398.    However, "'since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable.'" *Siggers-El*, 412 F.3d at 701 (quoting *Thaddeus–X*, 175 F.3d at 397). "Thus, the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage." *Siggers-El*, 412 F.3d at 701 (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).

Here, the alleged threat was to place Doss in administrative segregation. According to MDOC's Policy Directive for prisoner discipline (MDOC PD 03.03.105 ¶ DDDD), a prisoner may be reclassified into administrative segregation if he is adjudicated guilty of a Class I misconduct or for the underlying conduct of a Class II misconduct.  (ECF No. 38-8, PageID.323.)   As such, administrative segregation is synonymous with punishment and would not be commonplace under the *Sigger-El* analysis.   The undersigned cannot conclude that this type of threat is *de minimis*.

The undersigned concludes that a genuine issue of material fact remains regarding the issue of whether McPherson's alleged threat to place Doss in administrative segregation for filing grievances constituted an adverse action.

### ii.   Challenge to the Third Element: Motivating Factor of Retaliation

The Sixth Circuit noted:

> In the context of trying to defeat the other party's motion for summary judgment, where a prisoner must satisfy a higher burden to avoid having a First Amendment retaliation claim dismissed than Hill has to satisfy at the

present stage of the case at hand, this court noted that some evidence of retaliatory motive is required: "[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state a ... claim." *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation and internal quotation marks omitted). But because of the difficulty in producing direct evidence of an official's retaliatory motive, circumstantial evidence can suffice. *Holzemer v. City of Memphis*, 621 F.3d 512, 525–26, (6th Cir. 2010). This circumstantial evidence can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action. *Thaddeus–X*, 175 F.3d at 399. Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive. *Holzemer*, 621 F.3d at 526 (noting explicitly this court's reluctance to find retaliatory motive based on evidence of temporal proximity alone, but concluding that the evidence before it, if true, created an inference of retaliatory motive where temporal proximity existed along with other supporting evidence).

*Hill v. Lappin*, 630 F.3d 468, 475–76 (6th Cir. 2010).

Here, Doss's verified complaint, Martin's declaration, and Doss's deposition testimony allege a causal connection between Doss's protected conduct (the filing of grievances) and McPherson's alleged adverse action (the threat to have Doss place in administrative segregation). Therefore, the undersigned concludes that there is a genuine issue of fact as to this point.

**b. <u>Claim Two</u>: McPherson Kicked Mail under Doss's Cell Door in Retaliation for Grievances Filed**

McPherson again does not challenge the first element of Doss's claim. (ECF No. 38, PageID.230-231.)  The parties also do not dispute whether McPherson slid

Doss's mail underneath Doss's cell door to him.  (ECF No. 38, PageID.230-231; ECF No. 40, PageID.338-343.)  Instead, the parties dispute whether McPherson's sliding of the Doss's mail qualifies as adverse action against Doss (the second element).

McPherson argues that the sliding of mail cannot be adverse conduct because he was trained to deliver prisoner's mail in that manner.  (ECF No. 38, PageID.230-231.)  The undersigned concludes that the evidence presented by the parties fails to establish a genuine issue of material fact on this point, thus entitling McPherson to summary judgment on this claim.

The relevant question with respect to Doss's second claim is whether McPherson would have engaged in the same conduct (sliding Doss's mail under the cell door) in the absence of Doss's protected conduct.  *Thaddeus-X*, 175 F.3d at 394.

In his affidavit, McPherson says he slid Doss's mail under the cell door because he was trained to do so and because of security concerns that accompanies prisoners held in Level Five security.  (ECF No. 38-5, PageID.300-301.)  Further, McPherson added that, as a practical matter, the only way to deliver Doss's mail was to pass the mail under his cell door.  (*Id*.)  Lastly, McPherson attests that he did not slide the mail under the cell door as retaliation for grievances filed by Doss.  (*Id*.)  The relevant portion of McPherson's affidavit is shown below.

11

7.     In his Complaint at paragraph 10, prisoner Doss states that he filed a
grievance against me for retaliatory actions including placing prisoner Doss's mail on
the floor, which created a medical condition on prisoner Doss's hands.  I do not
remember this grievance or receiving notice regarding this grievance being filed against

2

me.  Further, regarding the mail that was placed on the floor, as an officer in Unit 5
where prisoner Doss locked, myself and other officers provided prisoner mail by sliding
it under the door.  I was trained to provide prisoner mail under the door by my instructor,
due to safety and security concerns.  The prisoners who locked in Unit 5 were classified
as level 5 prisoners, which meant they required the maximum level of security based on
certain factors.  Mail could not physically be passed through the top of the cell, and
center slots in the cells were designated for prisoner food only.  I did not intentionally
pass prisoner mail under the cells of prisoners, including the cell of prisoner Doss, to
retaliate for grievances filed against me.  I did not have any malicious intent in passing
mail under prisoner Doss's door.

Doss, on the other hand, has failed to provide evidence that establishes a
genuine issue of fact that McPherson would not have slid his mail under the call door
but for Doss filing grievances.

The undersigned also notes that Doss's misconduct record corroborates
McPherson's explanation for why he slid mail under the cell door. The records before
the Court show that Doss was found guilty of over 30 different misconduct tickets
that included violations for assault and battery, fighting, threatening behavior, and
possession of a weapon.  (ECF No. 38-7, PageID.310.)

**Michigan Department of Corrections**
**Offender Management System**
**Misconduct Summary Report**

| Offender Num: 785510 | | Offender Name: DOSS, DOMINIQUE | | | Location: STF | | |
|---|---|---|---|---|---|---|---|
| MCR No. | Violation Date/Time | Misconduct Charge Code | Verdict/ Finding | Reduced/ Elevated | Hearing Date | Hearing Location | Hearing Officer |
| 33 | 03/09/2016/07:30 | 420 - DISOBEYING A DIRECT ORDER | Guilty | Neither | 3/16/2016 | AMF | 099 |
| 32 | 01/27/2016/16:32 | 008 - Assault And Battery- Staff Victim | Guilty | Neither | 2/8/2016 | AMF | 034 |
| 31 | 11/17/2015/12:05 | 420 - DISOBEYING A DIRECT ORDER | Guilty | Neither | 11/23/2015 | AMF | 099 |
| 30 | 10/06/2015/18:55 | 012 - Threatening Behavior | Guilty | Neither | 10/12/2015 | AMF | 034 |
| 29 | 11/26/2014/16:30 | 007 - Assault And Battery- Prisoner Victim | Guilty | Neither | 12/8/2014 | AMF | 034 |
| 28 | 11/24/2014/18:18 | 420 - DISOBEYING A DIRECT ORDER | Guilty | Neither | 11/26/2014 | AMF | 099 |
| 27 | 08/15/2014/08:07 | 012 - Threatening Behavior | Guilty | Neither | 8/25/2014 | AMF | 034 |
| | | 420 - DISOBEYING A DIRECT ORDER | Guilty | Neither | | | |
| 26 | 08/15/2014/07:07 | 012 - Threatening Behavior | Guilty | Neither | 8/25/2014 | AMF | 034 |
| 25 | 07/13/2014/12:20 | 012 - Threatening Behavior | Guilty | Neither | 7/23/2014 | AMF | 034 |
| 24 | 06/15/2014/12:33 | 426 - INSOLENCE | Guilty | Neither | 6/15/2014 | AMF | 099 |
| 22 | 10/01/2013/02:35 | 420 - DISOBEYING A DIRECT ORDER | Guilty | Neither | 10/9/2013 | MBP | 040 |
| 21 | 05/15/2013/09:03 | 029 - Possession Of Weapon | Guilty | Neither | 5/20/2013 | MBP | 040 |
| 20 | 05/09/2013/14:30 | 436 - OUT OF PLACE | Guilty | Neither | 5/9/2013 | MBP | 099 |
| 19 | 04/08/2013/09:15 | 032 - Creating A Disturbance | Guilty | Neither | 4/15/2013 | MBP | 040 |
| 18 | 04/08/2013/09:45 | 420 - DISOBEYING A DIRECT ORDER | Guilty | Neither | 4/10/2013 | MBP | 099 |
| 16 | 03/21/2013/12:30 | 420 - DISOBEYING A DIRECT ORDER | Guilty | Neither | 3/21/2013 | MBP | 099 |
| | | 426 - INSOLENCE | Guilty | Neither | | | |
| 15 | 03/15/2013/19:16 | 014 - Fighting | Guilty | Neither | 3/20/2013 | MBP | 040 |
| 14 | 03/05/2013/20:05 | 420 - DISOBEYING A DIRECT ORDER | Guilty | Neither | 3/5/2013 | MBP | 099 |
| 13 | 01/29/2013/12:35 | 014 - Fighting | Guilty | Neither | 2/6/2013 | MBP | 040 |
| 12 | 07/26/2012/12:27 | 014 - Fighting | Guilty | Neither | 8/3/2012 | RMI | 048 |
| 11 | 07/11/2012/07:10 | 426 - INSOLENCE | Guilty | Neither | 7/12/2012 | IBC | 099 |
| 10 | 05/17/2012/13:00 | 423 - INTERFERENCE WITH THE ADMIN OF RULES | Guilty | Neither | 7/3/2012 | IBC | 099 |
| 9 | 06/02/2012/08:00 | 423 - INTERFERENCE WITH THE ADMIN OF RULES | Guilty | Neither | 6/26/2012 | IBC | 099 |
| 8 | 06/22/2012/07:45 | 423 - INTERFERENCE WITH THE ADMIN OF RULES | Guilty | Neither | 6/26/2012 | IBC | 099 |
| 7 | 05/29/2012/09:11 | 423 - INTERFERENCE WITH THE ADMIN OF RULES | Guilty | Neither | 6/6/2012 | IBC | 099 |
| 5 | 03/28/2012/13:08 | 020 - Disobeying A Direct Order (DDO) | Guilty | Neither | 4/4/2012 | IBC | 023 |
| 4 | 01/08/2012/14:45 | 012 - Threatening Behavior | Guilty | Neither | 1/12/2012 | RGC | 026 |
| 3 | 01/07/2012/18:45 | 426 - INSOLENCE | Guilty | Neither | 1/11/2012 | RGC | 099 |
| 2 | 01/07/2012/18:45 | 420 - DISOBEYING A DIRECT ORDER | Not Guilty | Neither | 1/11/2012 | RGC | 099 |
| | | 426 - INSOLENCE | Guilty | Neither | | | |
| | | 432 - CREATING A DISTURBANCE | Guilty | Neither | | | |
| 1 | 01/01/2012/14:28 | 426 - INSOLENCE | Guilty | Neither | 1/3/2012 | RGC | 099 |
| Total Misconducts: 30 | | | | | | | |

Accordingly, the undersigned concludes that McPherson is entitled to summary judgment on Doss's second claim.

### c. <u>Claim Three</u>: McPherson Poured Shampoo over Doss's Legal Paperwork in Retaliation for Grievances Filed

McPherson asserts that Doss has failed to present evidence indicating that he (McPherson) engaged in the adverse action at issue in this claim. McPherson also argues that Doss has failed to provide materials that meet the requirements of Fed. R. Civ. P. 56(c)(1)(A), specifically challenging unsworn declarations from two

prisoners.  (*See* ECF No. 1-8, PageID.38 (declaration of Benson L. Martin); ECF No. 1-9, PageID.39 (declaration of Samuel Sams).)

The undersigned has reviewed these declarations and concludes that Martin's declaration meets the requirements of Rule 56(c)(1)(A) because it includes an attestation that comports with the requirements of 28 U.S.C. § 1746.  Sams's declaration, however, does not meet those requirements because it is not signed.

A review of the record shows that there are two pieces of evidence supporting Doss's position:  Doss's verified complaint (ECF No. 1, PageID.4), and Martin's declaration (ECF No. 1-8, PageID.38).  McPherson offers his own affidavit (ECF No. 38-5, PageID.299-303), and MDOC's investigation into the alleged incident after Doss filed a grievance[5] (ECF No. 38-3, PageID.285-288).

The undersigned has reviewed the evidence and concludes that Doss has failed to present evidence establishing that a genuine issue of material fact exists with respect to the question of whether the incident occurred.  Doss's verified complaint does not state that he saw McPherson pour shampoo on his property.  His statement fails to establish his personal knowledge of this incident.  *See* Fed. R. Evid. 602. This section of his complaint is shown below.

---

[5]    MDOC investigated Doss's allegation after he filed grievance **AMF-15-09-2351-19c,** and it concluded that Doss's allegation was not supported by the evidence. (*See* ECF No. 38-3, PageID.285-288.)  But the undersigned notes that factual findings in grievance adjudications are not given preclusive effect.

11. On 9-27-15 plaintiff engaged in protective conduct filing an administrative grievance on Defendant McPherson for retaliation, poring shampoo on plaintiff's legal court documents and grievances while conducting a shake down, was his adverse action. Defendant stated to plaintiff, "You better be lucky we haven't set you up, only time will tell." See attached exhibits grievance AMF-15-09-2351-19C denied at all steps 1-3, See attached exhibit affidavits from (H) B. Martin 251228 and (I) Samuel Sams 698201.

(ECF No. 1, PageID.4.)

Martin's declaration also fails to establish that McPherson poured shampoo on Doss's papers.  Martin's declaration is shown below.

DECLARATION OF FACTS

ON BEHALF OF PRISONER DOMINIQUE DOSS #785510 I, PRISONER BENSON L. MARTIN #251228 DECLARE UNDER PENALTY OF PERJURY THAT ON 9-27-15 2ND SHIFT BARAGA CORRECTIONS OFFICER McPHERSON STATED TO INMATE DOSS "YOURE" GOING TO LEARN TO STOP LYING ON GRIEVANCES. THIS WAS STATED WHILE GOING TO THE SHOWER WHILE BACK IN OUR CELLS I WAS AT MY CELL DOOR AND HEARD A CONVERSATION BETWEEN C/O McPHERSON AND DOSS #785510, DOSS STATED WHY DID YOU PORE SHAMPOO OVER MY GRIEVANCES AND MY LEGAL DOCUMENTS. McPHERSON REPLIED "YOUR LUCKY WE HAVENT SET YOU UP YET. TIME WILL TELL. THIS IS WHAT I HEARD FROM MY CELL #133

15

(ECF No. 1-8, PageID.38.) Martin does not state that he *personally saw* McPherson pour shampoo. In fact, his declaration seems to indicate that both he and Doss were away at the showers when the alleged shampoo pouring took place. Martin goes on to report that he overheard a conversation in which one possible interpretation is that McPherson acknowledged pouring shampoo over the property.[6] The undersigned concludes that this thin reed of evidence is insufficient to overcome a motion for summary judgment.

In addition, the undersigned concludes that Doss has not presented evidence showing a causal connection between the alleged adverse action and the protected conduct. The verified complaint and Martin's declaration allege that Doss and McPherson were discussing Doss's grievance. But these statements are insufficient to create a genuine issue of material fact as to the causal connection element.

The undersigned concludes that McPherson is entitled to summary judgment on Doss's third claim.

### d. <u>Claim Four</u>: McPherson Issued a False Misconduct Ticket in Retaliation for Grievances Filed

With respect to Doss fourth claim, the parties do not contest that Doss engaged in protected conduct by filing grievances, and they do not dispute that McPherson

---

[6] The undersigned notes that Prisoner Sams's declaration (ECF No. 1-9, PageID.39) confirms that Doss was away at the showers when the alleged shampoo pouring took place. The undersigned is not relying on this statement because it does not meet the requirements of 28 U.S.C. § 1746.

issued Doss a Class I (major) misconduct ticket.[7]  McPherson nevertheless asserts that he is entitled to summary judgment because he would have issued Doss the misconduct ticket even if Doss had not filed grievances.  *See Thaddeus-X*, 175 F.3d at 399.

In addition to his affidavit, McPherson directs the Court's attention to Doss's statement in his verified complaint that he has threatened McPherson in the past (ECF No. 1, PageID.3), Doss's immense misconduct record (ECF No. 38-7, PageID.310), and MDOC's policy directive that defines threatening behavior as a Class I Misconduct (ECF No. 38-8, PageID.327).   (ECF No. 38, PageID.238-239.) McPherson also states that he issued Doss a Class I misconduct ticket because Doss threatened him with physical violence, and not because he wanted to retaliate against Doss.  (ECF No. 38-5, PageID.301-302.)

The undersigned concludes that McPherson has met his burden under the *Thaddeus-X* burden-shifting framework.   Given Doss's extensive history of misconduct, it is difficult to believe that a Corrections Officer would fail to issue a Class I misconduct ticket when confronted with the conduct described in the ticket. (See ECF No. 38-4, PageID.294-97.)   Doss has not given the Court any reason to

---

[7]    The undersigned also notes that the Court is not addressing Doss's claim that McPherson's misconduct ticket was false.  The hearing officer's factual findings in Doss's major misconduct hearing have preclusive effect. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action).  In this case, the hearing officer found Doss guilty.  (ECF No. 38-4, PageID.295.) Accordingly, the undersigned is not considering any claim by Doss that this misconduct ticket was false.

reach a different conclusion.  Doss's contention that he, in fact, threatened Doss on July 30, 2015, and was not charged does not alter this conclusion.  The Court simply lacks the ability to compare one threat with another or even to be sure that McPherson heard the first threat.

Consequently, the undersigned concludes that McPherson is entitled to summary judgment on Doss's fourth claim.

## VI.    Sovereign Immunity

To the extent that Doss is suing McPherson in his official capacity, such claims are barred by the Eleventh Amendment.  The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials.  *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989).  To the

extent that Doss seeks money damages, costs and fees from McPherson in his official capacity, that part of his lawsuit is barred by sovereign immunity.

## VII.   Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232).  A court may address these steps in any order.  *Id.* (citing *Pearson*, 555 U.S. at 236).  A government official is entitled to qualified immunity if either step of the analysis is not satisfied.  *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015)). "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft*, 563 U.S. at 742). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

Per the analysis provided above, the undersigned concludes that McPherson has not violated any of Doss's clearly established constitutional rights with respect to his second, third and fourth retaliation claims. Accordingly, those claims are barred by the doctrine of qualified immunity.

However, regarding Doss's first claim, the undersigned concludes that there are genuine issues of fact. There is little question, however, that the constitutional right implicated is Doss's First Amendment right to free speech without a State

20

actor's retaliation.  *See Martin*, 712 F.3d at 957.  Thus, the undersigned recommends denial of McPherson's request for qualified immunity as to Doss's first claim.

## VIII.  Recommendation

The undersigned respectfully recommends that the Court (1) deny McPherson's motion as to Doss's first claim, and (2) grant McPherson's motion as to Doss's second, third and fourth claims, and dismiss these claims with prejudice.  If the Court accepts this report and recommendation, the only remaining claim will be Doss's claim that McPherson retaliated against Doss on August 10, 2015, by threatening to send him to administrative segregation for filing grievances.


Dated:   June 5, 2020                            /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).